Nos. 2023-2296, 2023-2297

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

PARUS HOLDINGS, INC.,

*Appellant*,

v.

GOOGLE LLC,

*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Proceeding Nos. IPR2022-00358 and IPR2022-00523

**RESPONSIVE BRIEF OF APPELLEE GOOGLE LLC**

BENJAMIN HABER
O'MELVENY & MYERS LLP
400 S. HOPE STREET, 18TH FLOOR
LOS ANGELES, CA 90071-2899
(213) 430-6000

WILLIAM FINK
COKE MORGAN STEWART
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

CAITLIN P. HOGAN
O'MELVENY & MYERS LLP
TIMES SQUARE TOWER
7 TIMES SQUARE TOWER
NEW YORK, NY 10036
(212) 326-2000

March 4, 2024

*Attorneys for Appellee Google LLC*

**Representative Claims**

1. A method for retrieving information from *pre-selected web sites* by uttering speech commands into a voice enabled device and for providing to users retrieved information in an audio form via said voice enabled device, said method comprising the steps of:

[A] providing a computer operatively connected to the internet,

[B] said computer further being operatively connected to at least one speaker-independent speech recognition engine and to at least one speech synthesis engine;

[C] providing a voice enabled device operatively connected to said computer, said voice enabled device configured to receive speech commands from users;

[D] providing at least one instruction set stored in a database operatively connected to said computer, said instruction set comprising:

[E] *a plurality of pre-selected web site addresses*, each said web site address identifying a web site containing said information to be retrieved;

[F] providing a speech command to said speaker-independent speech recognition engine, said speech command corresponding to said instruction set;

[G] said speaker-independent speech recognition engine assigning said speech command to a recognition grammar, said speech command and said recognition grammar corresponding to said instruction set;

[H] transmitting said speech command to said speaker-independent speech recognition engine;

[I] said speaker-independent speech recognition engine receiving said speech command and selecting the corresponding recognition grammar upon receiving said speech command;

[J] said computer retrieving said instruction set corresponding to said recognition grammar selected by said speaker-independent speech

recognition engine;

[K] said computer accessing at least one of said plurality of web sites identified by said instruction set to obtain said information to be retrieved, said computer first accessing said first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, *said computer sequentially accessing* *said plurality of web sites until said information to be retrieved is found or* *until said plurality of web sites has been accessed*;

[L] said speech synthesis engine producing an audio message containing any retrieved information from said pre-selected web sites; and

[M] said speech synthesis engine transmitting said audio message to said users via said voice enabled device.

2. The method of claim 1 wherein said instruction set further comprises a. [sic] *content descriptor* *associated with each said web* *site address, said content descriptor pre-defining a portion of said* *web site containing said information to be retrieved.*

Appx95 ('941 patent) (emphasis added).

1. A method for retrieving information from web sites by uttering speech commands into a voice enabled device and for providing to users retrieved information in an audio form via said voice enabled device, said method comprising the steps of:

[A] providing a computer operatively connected to the internet,

[B] said computer further being operatively connected to at least one speaker-independent speech recognition engine and to at least one speech synthesis engine;

[C] providing a voice enabled device operatively connected to said computer, said voice enabled device configured to receive speech commands from users;

[D] providing a speech command to said speaker-independent speech recognition engine;

[E] said computer accessing at least one of a plurality of web sites associated with said speech command to obtain an information to be retrieved, said computer first accessing a first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, *__said computer sequentially accessing__ said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed*;

[F] said speech synthesis engine producing an audio message containing any retrieved information from said web sites; and

[G] said speech synthesis engine transmitting said audio message to said users via said voice enabled device.

2. The method of claim 1 wherein said speech command is further associated with a *__content descriptor__ associated with each said web site address, said content descriptor pre-defining a portion of said web site containing said information to be retrieved*.

Appx116 ('402 patent) (emphasis added).

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 23-2296, 23-2297

**Short Case Caption** Parus Holdings, Inc. v. Google LLC

**Filing Party/Entity** Google LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/04/2024

Signature: /s/ Coke Morgan Stewart

Name: Coke Morgan Stewart

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc. |
| | | Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| O'Melveny & Myers LLP | Coke Morgan Stewart | Benjamin Haber |
| Caitlin P. Hogan | William M. Fink | Wolf, Greenfield & Sacks, P.C. |
| Elisabeth H. Hunt | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................1

INTRODUCTION ...........................................................................................2

STATEMENT OF THE ISSUES........................................................................3

STATEMENT OF THE CASE............................................................................4

    I.     The Parties .....................................................................................4

    II.    Summary of the Asserted Patents and Claims ......................................4

    III.   The Relevant Prior Art ....................................................................9

        A.    The Wise Reference ................................................................9

        B.    The Shaffer Reference ..........................................................11

    IV.    Procedural History.........................................................................15

        A.    Summary of the Proceedings ...................................................15

        B.    In the '941 and '402 IPRs, Patent Owner disputed that
             Wise teaches the "content descriptor" limitation, but
             Patent Owner only appealed that issue for the '402 IPR .........16

SUMMARY OF THE ARGUMENT ..................................................................17

STANDARD OF REVIEW .............................................................................20

ARGUMENT ...............................................................................................20

    I.     The Board panels correctly found that Shaffer teaches the "said
        computer sequentially accessing" limitation of the '941 and'402
        patents..........................................................................................20

        A.    Whether Shaffer teaches "*said computer* sequentially
             accessing said plurality of web sites" is a question of fact......20

        B.    Even under a de novo standard, the Board panels
             correctly refused to import a negative limitation into the
             term "said computer" to exclude any "user interaction"
             from the "said computer sequentially accessing"
             limitation .............................................................................26

        C.    Patent Owner's claim construction arguments have no
             merit ...................................................................................30

D.   The Board panels did not shift any burden to the Patent Owner ........................................................................35

II.   The Board correctly found that Wise teaches the "plurality of preselected web sites"/"web site addresses" limitation of the '941 patent ................................................................................37

A.   The Board's finding as to Wise was supported by substantial evidence ...............................................37

B.   Patent Owner's arguments as to Wise have no merit ..............40

III.   Patent Owner's argument that Wise fails to teaches the "content descriptor" limitation of the '402 patent is barred by issue preclusion ............................................................................46

IV.   If not barred by issue preclusion, the Board correctly found that Wise teaches the "content descriptor" limitation of the '402 patent ................................................................................56

A.   The Board's findings as to Wise were supported by substantial evidence ...............................................56

B.   Patent Owner's arguments as to Wise have no merit ..............57

CONCLUSION ........................................................................63

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple Inc. v. Andrea Elecs. Corp.*,
  949 F.3d 697 (Fed. Cir. 2020) ........................................................44

*Arendi S.A.R.L. v. Google LLC*,
  882 F.3d 1132 (Fed. Cir. 2018) ......................................................20

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015)........................................................................47

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ......................................................61

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) ......................................................44

*Boston Sci. Scimed Inc. v. Cook Grp. Inc.*,
  809 F. App'x 984 (Fed. Cir. 2020) ..................................................39

*Cimline, Inc. v. Crafco, Inc.*,
  413 F. App'x 240 (Fed. Cir. 2011) ..................................................35

*CollegeNet Inc. v. ApplyYourself Inc.*,
  418 F.3d 1225 (Fed. Cir. 2005) ................................................ 29, 31

*Cook Grp. Inc. v. Boston Sci. Scimed, Inc.*,
  809 F. App'x 990 (Fed. Cir. 2020) ..................................................39

*Deposit Bank of Frankfort v. Bd. of Councilmen*,
  191 U.S. 499 (1903)........................................................................53

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015) ................................................ 35, 36

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
  881 F.3d 1354 (Fed. Cir. 2018) ......................................................21

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  847 F. App'x 901 (Fed. Cir. 2021) ..................................................27

*Google LLC v. Hammond Dev. Int'l, Inc.*,
  54 F.4th 1377 (Fed. Cir. 2022) .......................................... 20, 47, 53

*In re Arora*,
  369 F. App'x 120 (Fed. Cir. 2010) ..................................................43

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re BaxterInt'l., Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) ..........................................................61

*In re Cree, Inc.*,
818 F.3d 694 (Fed. Cir. 2016) ............................................................21

*In re Freeman*,
30 F.3d 1459 (Fed. Cir. 1994) ....................................... 47, 49, 51, 52

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) ..........................................................43

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ..........................................................21

*Intell. Ventures II LLC v. Aisin Seiki Co.*,
813 F. App'x 532 (Fed. Cir. 2020) ............................................. 20, 39

*K-2 Corp. v. Salomon SA*,
191 F.3d 1356 (Fed. Cir. 1999) ..........................................................36

*Kamstrup A/S v. Axioma Metering UAB*,
43 F.4th 1374 (Fed. Cir. 2022) ..........................................................32

*Kao Corp. v. Unilever U.S., Inc.*,
441 F.3d 963 (Fed. Cir. 2006) ............................................................26

*Lenovo Holding Co. v. DoDots Licensing Sols. LLC*,
No. 21-1247, 2021 WL 5822248 (Fed. Cir. Dec. 8, 2021) ................34

*MaxLinear Inc. v. CF CRESPE LLC*,
880 F.3d 1373 (Fed. Cir. 2018) ..........................................................47

*Mobile Tech, Inc. v. Invue Security Prods. Inc.*,
IPR2018-00481, Paper 29 (P.T.A.B. July 16, 2019) .........................54

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) .............................................. 27, 32, 35

*Ohio Willow Wood Co. v. Alps South LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ................................................. 47, 48

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Omega Eng'g Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ........................................................ 27, 32, 35

*Papst Licensing GMBH & Co. KG v. Samsung Elecs. of Am., Inc.*,
924 F.3d 1243 (Fed. Cir. 2019) ..........................................................52

*Par Pharm., Inc. v. TWi Pharms., Inc.*,
773 F.3d 1186 (Fed. Cir. 2014) ..........................................................44

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
170 F.3d 1373 (Fed. Cir. 1999) ..........................................................53

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 27, 42

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) ..........................................................20

*Rembrandt Diagnostics LP v. Alere Inc.*,
76 F.4th 1376 (Fed. Cir. 2023) ..........................................................44

*Rice v. Dep't of Treasury*,
998 F.2d 997 (Fed. Cir. 1993) ..................................................... 53, 54

*Stephen Slesinger, Inc. v. Disney Enters., Inc.*,
702 F.3d 640 (Fed. Cir. 2012) ..........................................................52

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
474 F.3d 1298 (Fed. Cir. 2007) ..........................................................39

*Trs. of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016) ..........................................................34

*United States v. Great Am. Ins. Co.*,
738 F.3d 1320 (Fed. Cir. 2013) ..........................................................61

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
74 F.4th 1360 (Fed. Cir. 2023) ..........................................................53

*Uship Intell. Props. LLC v. United States*,
714 F.3d 1311 (Fed. Cir. 2013) ..........................................................30

*VirnetX Inc. v. Apple Inc.*,
792 F. App'x 796 (Fed. Cir. 2019) ....................................................50

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ........................................................53

*Z4 Techs., Inc. v. Microsoft Corp.*,
507 F.3d 1340 (Fed. Cir. 2007) ....................................... 30, 31, 33, 34

**STATUTES**

35 U.S.C. § 101 ...............................................................................51

35 U.S.C. § 102 ...................................................................... 9, 11, 51

35 U.S.C. § 103 ...............................................................................51

35 U.S.C. § 112 ...............................................................................51

35 U.S.C. § 318 ...............................................................................52

**REGULATIONS**

37 CFR § 42.23 ......................................................................... 44, 60

**OTHER AUTHORITIES**

Changes to the Claim Construction Standard for Interpreting Claims
in Trial Proceedings Before the PTAB,
83 Fed. Reg. 51,340 (Oct. 11, 2018) .................................................36

*Federal Practice and Procedure* §§ 4419, 4433 (3d ed. 2021)........................ 51, 54

*Moore's Federal Practice* § 308.10 (3d ed. 2022) ..................................54

*Patents & the Federal Circuit*,
§ 6.2(c) (12th ed. 2015) ...................................................................36

PTAB Consolidated Trial Practice Guide 73-75 (2019)..........................44

Restatement (Second) of Judgments §§ 13, 27, 83........................... 51, 54

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceedings in the Patent Trial and Appeal Board ("Board") was previously before this or any other appellate court.

The patents on appeal, U.S. Patent Nos. 7,881,941 ("the '941 patent") and 8,185,402 ("the '402 patent"), are asserted in: *Parus Holdings, Inc. v. Google LLC*, No. 5:22-cv-7830 (N.D. Cal.).

This case may affect or be indirectly affected by the appeal from the Final Written Decision in IPR No. 2022-00805, which is currently pending before this Court as Case No. 24-1329 and addresses whether similar claim limitations in Patent Owner's U.S. Patent No. 9,769,314 ("the '314 patent") are obvious over the Wise reference at issue here.

This Court's decision in *Parus Holdings, Inc. v. Google LLC*, Nos. 22-1269, 22-1270, 70 F.4th 1365 (Fed. Cir. 2023) (Lourie, J.) addresses a related patent, U.S. Patent No. 7,076,431. The issues addressed in that decision relate to grounds in the below IPRs not reached by the Board.

This case may indirectly affect pending IPR No. IPR2022-00279, which addresses whether similar claim limitations in Patent Owner's U.S. Patent No. 6,721,705 are obvious over the Wise reference at issue here.

## INTRODUCTION

The claims in this case come from two related patents and involve the retrieval of information from websites using speech commands. The claims recite five main elements: (1) providing a speech command to a voice-enabled device, such as a telephone, connected to the internet to request and obtain information, (2) accessing at least one of a plurality of websites to obtain the requested information, (3) if the requested information is not found at the first website, sequentially accessing the plurality of websites until the information is found or until all of the websites have been accessed, (4) "producing an audio message containing any retrieved information" from the websites, and (5) transmitting the audio message to the user via the voice-enabled device.

Two prior art references render the claims obvious. The first reference is a U.S. patent filed by Wise, which describes a system for accessing websites to retrieve information requested by a voice command and storing the information hierarchically in an index. The second is a U.S. patent filed by Shaffer, which describes an automated system for sequentially visiting multiple websites. The combination of these prior art references—the website retrieval system and hierarchically stored index of Wise and the process for sequentially accessing websites of Shaffer—describe the same system in the claims at issue here.

As explained below, separate Board panels found all of the challenged claims to be obvious in view of Wise and Shaffer (and another reference, Burrows, not at issue). Because the Final Written Decisions were supported by substantial evidence and because Patent Owner fails to identify any errors that would otherwise warrant reversal or remand, the Board panels' Decisions should be affirmed.

## STATEMENT OF THE ISSUES

1. As to the "said computer sequentially accessing" limitation of the '941 and '402 patents:

(a) Was each Board panel's finding that Shaffer teaches the limitation supported by substantial evidence?

(b) Did each Board panel correctly refuse to import a negative limitation that excludes user interaction?

2. Was the '941 Board panel's finding that Wise teaches the "plurality of pre-selected web sites"/"web site addresses" limitation of the '941 patent supported by substantial evidence?

3. As to the "content descriptor" limitation of the '402 patent:

(a) Is Patent Owner's argument that Wise fails to teaches the "content descriptor" limitation, the same argument that Patent Owner litigated and lost in

the '941 IPR, barred by issue preclusion due to Patent Owner's failure to appeal that issue in the appeal of the '941 IPR?

(b) If not barred by issue preclusion, was the '402 Board panel's finding that Wise teaches the "content descriptor" limitation of the '402 patent supported by substantial evidence?

## STATEMENT OF THE CASE

### I.    The Parties

Google LLC is a leading American multinational technology company focusing on artificial intelligence, online advertising, search engine technology, cloud computing, computer software, quantum computing, e-commerce, and consumer electronics.

Patent Owner Parus Holdings, Inc. owns patents related to Internet information-retrieval systems and has asserted them against a number of major information technology companies.

### II.   Summary of the Asserted Patents and Claims

The '941 patent, titled "Robust Voice Browser System and Voice Activated Controller," issued on February 1, 2011, and is assigned to Parus Holdings, Inc. Appx78. The '402 patent, having the same title, issued on May 22, 2012, and is assigned to Parus Holdings, Inc. Appx97. The '941 and '402 patents are each continuations from the same two provisional applications and have substantively identical specifications.

This appeal involves claims 1-15 of the '941 patent and claims 1-15 of the '402 patent. These claims concern "a method for retrieving information from [pre-selected] web sites by uttering speech commands." Appx95-96, Appx116.

As illustrated in figure 1 below, the claimed method includes five main elements: (1) providing a speech command to a voice-enabled device, such as a telephone, connected to the internet to request and obtain information, (2) accessing at least one of a plurality of websites to obtain the requested information, (3) if the requested information is not found at the first website, sequentially accessing the plurality of websites until the information is found or until all of the websites have been accessed, (4) "producing an audio message containing any retrieved information" from the websites, and (5) transmitting the audio message to the user via the voice-enabled device. Appx95-96, Appx116.



FIG. 1

Claim 1 of the '941 patent is representative and recites:

1. A method for retrieving information from ***pre-selected web sites*** by uttering speech commands into a voice enabled device and for providing to users retrieved information in an audio form via said voice enabled device, said method comprising the steps of:

[A] providing a computer operatively connected to the internet,

[B] said computer further being operatively connected to at least one speaker-independent speech recognition engine and to at least one speech synthesis engine;

[C] providing a voice enabled device operatively connected to said computer, said voice enabled device configured to receive speech commands from users;

[D] providing at least one instruction set stored in a database operatively connected to said computer, said instruction set comprising:

[E] ***a plurality of pre-selected web site addresses***, each said web site address identifying a web site containing said information to be retrieved;

[F] providing a speech command to said speaker-independent speech recognition engine, said speech command corresponding to said instruction set;

[G] said speaker-independent speech recognition engine assigning said speech command to a recognition grammar, said speech command and said recognition grammar corresponding to said instruction set;

[H] transmitting said speech command to said speaker-independent speech recognition engine;

[I] said speaker-independent speech recognition engine receiving said speech command and selecting the corresponding recognition grammar upon receiving said speech command;

[J] said computer retrieving said instruction set corresponding to said

recognition grammar selected by said speaker-independent speech recognition engine;

[K] said computer accessing at least one of said plurality of web sites identified by said instruction set to obtain said information to be retrieved, said computer first accessing said first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, ***said computer sequentially accessing*** *said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed*;

[L] said speech synthesis engine producing an audio message containing any retrieved information from said pre-selected web sites; and

[M] said speech synthesis engine transmitting said audio message to said users via said voice enabled device.

Appx95 (emphasis added).[1]

Dependent claim 2 of the '941 patent depends from claim 1 and recites:

2. The method of claim 1 wherein said instruction set further comprises a. [sic] ***content descriptor*** *associated with each said web site address, said content descriptor pre-defining a portion of said web site containing said information to be retrieved.*

*Id*.

Claim 9 is an independent claim that is substantially similar to claims 1 and 2. The remaining claims depend from claims 1 and 9 and disclose minor variations thereof. Appx95-96.

Claim 1 of the '402 patent is representative, is substantially similar to claim 1 of the '941 patent, and recites:

---

[1] Annotations and emphases have been added herein unless otherwise noted.

1. A method for retrieving information from web sites by uttering speech commands into a voice enabled device and for providing to users retrieved information in an audio form via said voice enabled device, said method comprising the steps of:

[A] providing a computer operatively connected to the internet,

[B] said computer further being operatively connected to at least one speaker-independent speech recognition engine and to at least one speech synthesis engine;

[C] providing a voice enabled device operatively connected to said computer, said voice enabled device configured to receive speech commands from users;

[D] providing a speech command to said speaker-independent speech recognition engine;

[E] said computer accessing at least one of a plurality of web sites associated with said speech command to obtain an information to be retrieved, said computer first accessing a first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, *said computer sequentially accessing said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed*;

[F] said speech synthesis engine producing an audio message containing any retrieved information from said web sites; and

[G] said speech synthesis engine transmitting said audio message to said users via said voice enabled device.

Appx116.

Dependent claim 2 of the '402 patent depends from claim 1, is substantially

similar to claim 2 of the '941 patent, and recites:

2. The method of claim 1 wherein said speech command is further associated with a **content descriptor** *associated with each said web*

> *site address, said content descriptor pre-defining a portion of said*
> *web site containing said information to be retrieved.*

*Id*.

Claim 9 is an independent claim that is substantially similar to claims 1 and 2. The remaining claims depend from claims 1 and 9 and disclose minor variations thereof. Appx116.

## III. The Relevant Prior Art

### A. The Wise Reference

The Wise reference, titled "Computer Network Audio Access and Conversion System," is U.S. Patent No. 5,884,262, issued on March 16, 1999. Appx1132-42. Wise qualifies as prior art under at least pre-AIA 35 U.S.C. § 102(b), based on its issue date.

Wise teaches a "voice response system" including "voice recognition" that "attempt[s] to match a speech input" via a simple telephone "to a preselected list of potential selections or choices." Appx1137 (1:66-2:2, 2:50-58), Appx1139 (6:20-28). As shown in figure 2 below, in Wise, the voice command is translated from the telephone and the word/phrase is passed to Call Manager 210 to select "a predetermined audio-compatible address" and routed to Parser 230. Appx1139 (6:31-40).



FIG. 2

Parser 230 either "match[es] a predetermined file address, stored in memory," to the word/phrase or sends it "to Searcher 240 . . . to find addresses of files on a target computer network 15" relating to the word/phrase, e.g., webpages relating to "Washington D.C. area weather." Appx1139 (6:40-49). Wise's computer memory connected to the parser is configured to store "predetermined file addresses." Appx1141-42 (claim 8).

Parser 230 passes the web address "to Browser 250 which establishes a connection to the appropriate server 18 through the network 15," "downloads the entire requested file," and passes it back to Parser 230. Appx1140 (7:7-13). Parser 230 analyzes the contents and structure of the downloaded file, sends a "compressed text segment" through Call Manager 210 to be converted into audio and routed to audio file player 270. Appx1140 (7:13-20, 7:38-42).

Wise discloses that the parser and call manager together determine whether the retrieved websites "reach a threshold level of compatibility," and, if so, they are indexed. Appx1141 (10:2-7). Wise's "index may be stored as one or more documents" or "files" that correspond to HTML files "on the World Wide Web" "preferably in a hierarchical order." Appx1141 (10:7-9), Appx1132 (Abstract). Wise explains that "[a]ll documents may contain content which is useful for navigation" such as "tags designating links or portions of a document." Appx1137 (2:61-64). Wise's system "navigate[s] to a location corresponding to a user command and effect[s] any action possible at that location." Appx1137 (2:64-66). For example, "in a document containing . . . stock symbols and quotes, if a user inputs a command corresponding to a stock symbol, the system may skip ahead to the symbol and begin 'reading' at the location of the stock symbol." Appx1138 (3:4-8).

### B.     The Shaffer Reference

The Shaffer Reference, titled "Automated Visiting of Multiple Web Sites," is U.S. Patent No. 5,950,165, issued on September 7, 1999. Appx1153-65. Shaffer qualifies as prior art under at least pre-AIA 35 U.S.C. § 102(b), based on its issue date.

Shaffer teaches an apparatus and method for allowing a telephone user to be automatically connected, in sequence, to multiple websites in response to a single

directory assistance query, wherein the user connected to the internet "navigate[s] by voice interaction through queued site-visit options." Appx1153 (Title, Abstract), Appx1164 (5:34-6:29). Shaffer's search technique is implemented by computer system 502, which "runs applications 508 including a selector script 510 and a browser 511." Appx1164 (5:28-29). In figure 5, at voice recognition unit 518, a "user inquires about web sites" on the "Internet." Appx1164 (5:30-35).



FIG. 5

In figure 6, at "step 602," a browser supplies a list of sites to the user "in response to a voice search request or saved from a previous session." Appx1164 (5:34-66).



FIG. 6

At "step 624," the sub-steps of which are depicted in figure 7, "the system visits the sites" sequentially until the user is satisfied with what has been returned or the list is exhausted. Appx1164 (6:1-29).



FIG. 7

"Voice response unit" (VRU) 516 asks "whether the system is at the end of the list of sites to visit." Appx1164 (6:4-5). "If yes, the method is finished," but, if not, as indicated "by a 'NO' response," the VRU asks the user "whether he wishes to visit the next site" on the list. Appx1164 (6:6-12). If the user's response is "YES," the system visits the next site. Appx1164 (6:20-21). The VRU then "asks the user if he is satisfied," and, "[i]f the user answers 'NO,'" the steps of figure 7 are repeated "until the user is satisfied." Appx1164 (6:25-29).

## IV. Procedural History

### A. Summary of the Proceedings

Google filed its Petition challenging claims 1-15 of the '941 patent on January 21, 2022 (Appx217, Appx273-92, Appx307) and its Petition challenging claims 1-15 of the '402 patent on February 1, 2022 (Appx5641, Appx5692-706, Appx5724). Each Petition was supported by a declaration from expert witness Stuart Lipoff, who has over 50 years of experience with voice interfaces and information processing technologies. Appx863 (Lipoff '941 Decl.), Appx988-1005, Appx6284 (Lipoff '402 Decl.), Appx 6398-409.

The '941 Petition and '402 Petition each asserted four grounds, only two of which are relevant on appeal: whether claims 1-2 are rendered obvious by Wise in view of Shaffer and whether claims 3-15 are rendered obvious by Wise in view of Shaffer and Burrows. Appx234-35, Appx5657-58.

On August 4, 2022, separate Board panels instituted review on all asserted grounds in the '941 and '402 IPRs. Appx414-15, Appx458-59, Appx5829-30, Appx5873. The Board panels included two of the same administrative patent judges.

Neither party sought to construe any claim terms in the '941 and '402 patents during the IPR proceedings. Appx238, Appx5661, Appx431, Appx5838-39, Appx494, Appx5911.

On May 4, 2023, the panels held a combined oral hearing. Appx725. And, on August 1, 2023, the panels issued separate Final Written Decisions, concluding that claims 1-15 of the '941 patent and claims 1-15 of the '402 patent were unpatentable over Wise in view of Shaffer (ground 3) and Wise in view of Shaffer and Burrows (ground 4). Appx19-36, Appx56-74.

Neither of the two Board panels found it necessary to construe any terms for the Final Written Decisions. Appx10-11, Appx48.

Having found the claims obvious under grounds 3-4, the Board did not reach grounds 1-2 (applying Kovatch) in either IPR. Appx7 (n.1), Appx36, Appx46 (n.1), Appx74-75 ("Because the Wise-Shaffer/Wise-Shaffer-Burrows obviousness grounds (Grounds 3–4) are dispositive as to all challenged claims . . . we need not reach Petitioner's challenges based on obviousness over Kovatch and Neal, and Kovatch, Neal and Burrows.").

**B.** **In the '941 and '402 IPRs, Patent Owner disputed that Wise teaches the "content descriptor" limitation, but Patent Owner only appealed that issue for the '402 IPR**.

In both Petitions, Google asserted that Wise teaches the "content descriptor" limitation through Wise's disclosure of tags that designate links or portions of a document such as a webpage for the system to attempt to navigate to "corresponding to a user command." Appx290-91, Appx5704-05. This limitation is

16

added in claim 2 in each of the patents, and, while repeated in other claims, claim 2 is treated as representative.

In its Preliminary Responses, Patent Owner disputed that Wise teaches the "content descriptor" limitation. Appx327, Appx391-95, Appx5741, Appx5804-08. However, after institution, Patent Owner did not explicitly challenge whether Wise teaches the "content descriptor" limitation in the '941 IPR (Appx483, Appx567-74) but continued to explicitly challenge whether Wise teaches this limitation in the '402 IPR (Appx5897, Appx5977-81). Patent Owner's only explanation for this decision was a statement in oral argument that "there is a limited number of words that can be included in a Patent Owner response. The briefing is limited." Appx768 (44:7-12).

Although the Board found the "content descriptor" limitation taught by Wise in both IPRs, Patent Owner only appeals this finding as to the '402 IPR.

## SUMMARY OF THE ARGUMENT

In their Final Written Decisions, the Board panels correctly concluded that claims 1-15 of the '941 patent and claims 1-15 of the '402 patent are obvious in view of the combination of Wise and Shaffer and a third reference (Burrows) not at issue on appeal. Patent Owner argues that the Board panels made three errors. None of those arguments have merit, and one is barred by issue preclusion.

First, Patent Owner argues that the Shaffer reference does not teach the "said computer sequentially accessing" limitation—not because the "sequentially accessing" steps are not taught but because Shaffer relies in part on user interaction. Patent Owner argues that whether or not this limitation is taught is a question of law because it turns on what the term "said computer" means. But, in fact, it turns on what Shaffer teaches—a question of fact. There is ample support in Shaffer for the finding that, despite some user interaction, it is the computer, not the user, that implements the "said computer sequentially accessing" steps. Additionally, even if the question were an issue of law—what "said computer" means—the Board correctly concluded that "the plain and ordinary meaning of the sequential access limitation" does not "exclude user interaction."

Second, Patent Owner argues that Wise does not teach the "plurality of pre-selected web sites"/"web site addresses" limitation—not because Wise fails to teach a pre-selected website corresponding to the speech command but because Wise fails to teach pre-selected *websites* (plural). Appellant Br. 20-22. But Wise's claim 8, which depends on claim 1, explicitly teaches "predetermined file addresses" (plural) and ties that teaching to the speech command (singular). Moreover, Patent Owner admitted that Wise teaches this limitation in a related proceeding. Any doubt as to this teaching was resolved by Google's expert, Mr. Lipoff, who testified as to the meaning of Wise generally and claim 8 specifically.

To overcome this evidence, Patent Owner claims Mr. Lipoff's testimony was untimely and that he was making an inherency argument. Neither is true. Mr. Lipoff testified to Wise's pre-selection process and claim 8 in his original declaration in support of Google's Petition and only elaborated on such testimony in his deposition and in a responsive reply declaration to rebut Patent Owner's arguments. And Mr. Lipoff testified as to what Wise explicitly teaches, not what would be inherent in Wise.

Third, Patent Owner argues that Wise does not teach the "content descriptor" limitation found in the '402 patent. But Patent Owner litigated this same argument and lost in the '941 IPR—and then failed to appeal the issue making it final for issue preclusion purposes. Therefore, it cannot maintain this argument on appeal. Even if it could, the Board's finding that Wise teaches the broad "content descriptor" limitation of the '402 patent was supported by substantial evidence. Specifically, relying on Mr. Lipoff's testimony, the Board found that Wise's disclosure of documents that contain content for navigation, such as "tags" that designate portions of or links in a document, as well as the corresponding software, meet this limitation.

For these reasons, the Decisions of the Board panels were supported by substantial evidence and correct as a matter of law and should be affirmed.

**STANDARD OF REVIEW**

This Court reviews "the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015). While claim construction, the ultimate conclusion of obviousness, and issue preclusion are questions of law reviewed de novo, any "underlying factual findings that draw on extrinsic evidence," including expert testimony, "are reviewed for support by substantial evidence in the record." *Arendi S.A.R.L. v. Google LLC,* 882 F.3d 1132, 1133 (Fed. Cir. 2018); *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1380 (Fed. Cir. 2022) ("Collateral estoppel may implicate underlying facts, which we review for substantial evidence."). Finally, the Court "defer[s] to the Board's credibility determinations regarding expert testimony." *Intell. Ventures II LLC v. Aisin Seiki Co.*, 813 F. App'x 532, 538 (Fed. Cir. 2020).

**ARGUMENT**

I.   **The Board panels correctly found that Shaffer teaches the "said computer sequentially accessing" limitation of the '941 and '402 patents**.

A.   **Whether Shaffer teaches "*said computer* sequentially accessing said plurality of web sites" is a question of fact**.

Patent Owner does not dispute that Shaffer teaches "sequentially accessing said plurality of websites." Rather, it disputes that Shaffer teaches "that 'said *computer*' performs the sequentially accessing." Appellant Br. 3. Specifically, Patent Owner argues that "Shaffer teaches sequential access *by the user*: the user

iteratively examines each web site in a 'visit list'—itself initially determined by the user—to determine whether or not to access the next web site in the list." Appellant Br. 30 (emphasis in original). Google argues (and the Board agreed) that Shaffer teaches sequential access by a *computer* with a certain level of user interaction.

Patent Owner attempts to characterize this as a question of law, but such an argument turns on a dispute about what Shaffer teaches—a question of fact reviewed for substantial evidence. "'Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence,' meaning that 'it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Elbit Sys. of Am., LLC v. Thales Visionix, Inc*., 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re NuVasive, Inc*., 842 F.3d 1376, 1379-80 (Fed. Cir. 2016)). "If two 'inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" *Elbit Sys*., 881 F.3d at 1356 (quoting *In re Cree, Inc*., 818 F.3d 694, 701 (Fed. Cir. 2016)). Here, the Board possessed substantial evidence that in Shaffer "said computer sequentially access[es] said web sites."

Claim 1 of the '941 patent and claim 1 of the '402 patent recite the identical limitation: "said computer sequentially accessing said plurality of web sites until

said information to be retrieved is found or until said plurality of web sites has been accessed." Appx25, Appx60. Neither party advanced an express construction for any terms in this limitation and instead relied on the terms' plain and ordinary meaning. Appx10-11, Appx48.

In the '941 IPR, the Board agreed with Google that "Shaffer's disclosure of sequentially accessing websites according to a list, until a user is satisfied with what has been returned or the list is exhausted," meets the limitation. Appx25 (citing Appx288-89, Appx1002-03 (¶¶ 241-243), Appx1164 (5:34-35, 6:1-29)).

As depicted in figure 7, below, Shaffer discloses that a "user inquires about web sites," and the system then visits the sites sequentially until the user is satisfied with what has been returned or the list is exhausted. Appx1164 (5:34-35, 6:1-29).



FIG. 7

Specifically, at "substep 704," "voice response unit" (VRU) asks "whether the system is at the end of the list of sites to visit." Appx1164 (6:4-5). "If yes, the method is finished," but, if not, as indicated "by a 'NO' response," at "substep 710," the VRU asks the user "whether he wishes to visit the next site" on the list. *Id*. (6:6-12). If the user's response is "YES," the system visits the next site at "substep 716." *Id.* (6:20-21). At "substep 722," the VRU "asks the user if he is satisfied," and, "[i]f the user answers 'NO,'" the steps are repeated "until the user is satisfied." *Id*. (6:25-29).

While a user is involved in this process, Shaffer explains that it is the computer that is doing the sequential accessing required by the claims. For example, Shaffer teaches that "a *browser* supplies a list of sites." Appx14, Appx52 (citing Appx1164 (5:34-37)). "The *browser* uses the supplied sites to initialize a candidate list of sites to visit" (Appx52 (citing Appx1164 (5:46-48)) and "a *selector script*" checks "whether the site list is exhausted." Appx14 (citing Appx1164 (5:48-50)).

Likewise, "the system" manages the process: "When the candidate list is exhausted, the visit list is complete" (Appx14 (citing Appx1164 (5:64-65))) and "*the system* visits the sites." Appx25 (citing Appx288-89 ('941 Petition) (citing Appx1164 (6:1-29))), Appx63-64 (citing Appx5696 ('402 Petition) (citing Appx1164 (6:1-29))). Shaffer then determines "whether the *system* is at the end of the list of sites to visit," and "[i]f yes, the method is finished." Appx25 (citing Appx288-89 (citing Appx1164 (6:4-6))), Appx63-64 (citing Appx5696 (citing Appx1164 (6:4-6))). If not, the Voice Response Unit ("VRU") asks the user "whether he wishes to visit the next site" on the list. Appx25 (citing Appx288-89 (citing Appx1164 (6:6-12))), Appx63-64 (citing Appx5696 (citing Appx1164 (6:6-12))). If the user's response is "YES," "the *system* visits the [next] site." Appx25 (citing Appx288-89 (citing Appx1164 (6:20-21))), Appx63-64 (citing Appx5696 (citing Appx1164 (6:20-21))). These steps are repeated "until the user is satisfied."

Appx25 (citing Appx288-89 (citing Appx1164 (6:25-29))), Appx63-64 (citing Appx5696 (citing Appx1164 (6:25-29))).

Thus, as Shaffer makes plain, all of these steps are taken by software implemented by the computer. So, the steps are expressly performed by a computer, as the claim language requires.

In combining this teaching with Wise, the Board also relied on the testimony of Google's expert, Mr. Lipoff, explaining that a person of ordinary skill in the art would have been motivated to combine Shaffer's sequential access technique when retrieving information from websites in Wise's ranked index "because it would have been beneficial to maximize the likelihood of finding the desired information more quickly and efficiently *us[ing] computing resources*, by searching in the most likely sources first, and proceeding through Wise's index list until the user is satisfied or the list is exhausted." Appx25 (citing Appx289 (citing Appx275-278 (citing Appx988-91 (¶¶ 209-215))), Appx1002-03 (¶ 243)). The Board found that Google articulated "sufficient reason, supported by rational underpinning, to achieve the combination of teachings it proposes." Appx27.

Thus, in the '941 IPR, the Board relied on substantial evidence in the form of Shaffer's specific teachings and the testimony of Google's expert to support its finding that the combination of Wise and Shaffer teaches the "said computer sequentially accessing" limitation.

The Board in the '402 IPR reached the same conclusion. Appx63-64. In doing so, it relied on the same substantial evidence as in the '941 IPR: Shaffer's disclosures (Appx63 (citing 1164 (6:3-29)) and the testimony of Mr. Lipoff (Appx60-61, Appx63-64 (citing Appx6398 (¶ 200), Appx6401 (¶ 205))).

Patent Owner does not present any argument on appeal that the Board lacked substantial evidence in finding that this limitation is met. Rather, it argues that the Board made an erroneous claim construction.[2] Therefore, if the Court agrees that this is a question of fact or if the Court agrees that the Board properly interpreted the claim term, Google must prevail as to this limitation.

**B.     Even under a de novo standard, the Board panels correctly refused to import a negative limitation into the term "said computer" to exclude any "user interaction" from the "said computer sequentially accessing" limitation**.

During the IPRs, neither Google nor Patent Owner offered an express construction of the term "said computer" in the "said computer sequentially accessing" limitation. Appx238, Appx494, Appx5661, Appx5911. And the Board

---

[2] The only reference to whether the Board panels had substantial evidence to make this finding is at the end of Patent Owner's claim construction argument, where Patent Owner states that the Board committed "legal error under any standard of review—whether de novo review or review for substantial evidence." Appellant Br. 43. This is not enough to preserve an argument on appeal. *Kao Corp. v. Unilever U.S., Inc*., 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (explaining that "glancing references" to an argument are waived where "[n]either the statement of issues presented, nor the summary of argument, nor the argument section sets forth any substantive discussion" of the issue).

likewise found it unnecessary to construe that term. Appx10-11, Appx48. But Google explained that Patent Owner, in attempting to distinguish Shaffer, impliedly sought to import a negative litigation. Appx608-10, Appx6018-20. The Board rejected Patent Owner's argument and refused to import a negative limitation into the term "said computer." Appx25-27, Appx60-64. The Board was correct, as nothing in the claims, specification, or prosecution history precludes a user from interacting with a computer during the "said computer sequentially accessing" process.

It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Thus, a negative limitation in a claim must be supported by the words of the claim or an "express disclaimer or independent lexicography" in the specification. *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003); *see also Ethicon LLC v. Intuitive Surgical, Inc.*, 847 F. App'x 901, 907-08 (Fed. Cir. 2021). "While a negative limitation need not be recited in the specification *in haec verba*, there generally must be something in the specification that conveys to a skilled artisan that the inventor intended the exclusion." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022) (emphasis in original). Silence is not sufficient support for a negative limitation. *Id.*

Beginning with the claims, as each Board panel recognized, claim 1 of the '941 patent and claim 1 of the '402 patent do not explicitly require or prohibit user interaction or instruction. Thus, as the Board correctly concluded, there is nothing in the claims that precludes user interaction with the computer-implemented process during the "said computer sequentially accessing" step, as Patent Owner argues. Appx26-27, Appx61-63.

As to the specification, it likewise does not support importing a negative limitation into the claims. Indeed, both parties and their experts agreed that the specifications of the '941 and '402 patents are "silent with respect to user participation during sequential access." Appx26-27 (citing Appx573-74 ('941 POR), Appx608-09 ('941 Reply), Appx771-73 (47:19-49:23) (Hearing)), Appx62 (citing Appx5982-83 ('402 POR), Appx6018-19 ('402 Reply)).

As to the prosecution history, there were no office actions, amendments, or arguments made during prosecution for the '941 and '402 patents that would support importing Patent Owner's proposed negative limitation. The examiner's only substantive rejections for both patents were double patenting rejections, which were overcome by the applicant filing terminal disclaimers. Appx1171, Appx1269-75, Appx1302-12, Appx1335-42, Appx1350-59, Appx6432, Appx6537-41, Appx6566-73, Appx6581.

Finally, both parties' experts testified that the claims themselves do not preclude user interaction. Appx2412, Appx2575 (164:1-7) (Patent Owner's expert testifying "I don't believe the '941 claim precludes [user] interaction"), Appx2305-09 (¶¶ 15-16) (Mr. Lipoff testifying that "[t]he language of independent Claim 1 does not preclude user interaction or instruction"). And both testified that the specification is silent as to user interaction. Appx26-27 (citing Appx5069, Appx5228-29 (¶ 315)), Appx62 (citing Appx7247, Appx7391-92 (¶ 289), Appx4862, Appx4969 (107:15-22)).

The Court has addressed a similar claim construction issue in the context of what the term "automatically" means. In *CollegeNet Inc. v. ApplyYourself Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005), the Court declined to import a negative limitation, "without human intervention," when the term "automatically" was used. The Court reasoned that "a machine still performs the claimed functions without manual operation, even though a human may initiate or interrupt the process." *Id.* Analogizing to other applications, the Court explained that "'simply because a human has to load [an automatic dishwasher] and press the start button, and has the ability to turn it off mid-cycle, does not mean that the device does not 'automatically' wash the dishes.'" *Id.* And, similarly, "'an 'autopilot' which is turned on by a human and necessarily must be able to be interrupted by a human once the automatic process is engaged . . . remains an 'automatic' device.'" *Id.*; *see*

*also Uship Intell. Props. LLC v. United States,* 714 F.3d 1311, 1313-15 (Fed. Cir. 2013) (the use of "automated machine" in a claim supported "limiting each step of the claims to performance by a machine" only due to prosecution disclaimer).

Similarly, in *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350-51 (Fed. Cir. 2007), the Court rejected the argument that the terms "automatic" and "electronic" meant "without user intervention." Microsoft argued that "once users choose the electronic or automatic registration mode (as contrasted with the manual mode), the initiation of the registration communication must commence without any user interaction." *Id.* at 1351. The Court disagreed because "[a]lthough the specification disclose[d] that automatic registration [was] performed 'without user *intervention*,' the claims require[d] at least a minimal level of user interaction to select the registration mode." *Id.* (emphasis in original) (citation omitted). Thus, the Court found, like the Board did here, that "nothing in the claims or specification preclude[d] user interaction" and that the district court's rejection of Microsoft's "attempt to exclude *any* user interaction from the claims" was correct. *Id*. (emphasis in original).

### C.     Patent Owner's claim construction arguments have no merit.

Patent Owner presents a litany of arguments regarding claim construction, but they do not overcome the evidence and case law discussed above.

As to the claims, Patent Owner argues that the recitation of "said computer" means "the computer is taking this action" and "users play no role." Appellant Br. 34. But this is merely attorney argument; the claims nowhere say that "users play no role." The fact that the claims require a computer to perform certain steps does not prohibit a user interacting with the computer, just as the claims requiring a user to perform certain steps does not prohibit a computer interacting with the user. *See, e.g., Z4 Techs.*, 507 F.3d at 1350-51; *CollegeNet*, 418 F.3d at 1235.

Patent Owner also points to the surrounding claim language as "distinguish[ing] between the users and the computer." Appellant Br. 33-34. But the claims do not distinguish between these actors. The claim steps never recite the term "user" except to explain that the system's purpose is to provide information "to the user." Appx95 (claim 1), Appx116 (claim 1). The claims do suggest that a user makes the speech commands, but, if anything, that means that the claims *require* user interaction not that they exclude it; the user specifically makes speech commands to a computer, which then processes and responds. *Z4 Techs.*, 507 F.3d at 1351.

As to the specification, Patent Owner argues that "where the claims recite sequential access by 'said computer,'" "silence in the specifications as to any other possibility ends the analysis." Appellant Br. 35. But that the specification is silent does not support importing a negative limitation into the claims. *See Novartis*, 38

F.4th at 1017 (silence is not sufficient support for a negative limitation); *see also Kamstrup A/S v. Axioma Metering UAB*, 43 F.4th 1374, 1383 (Fed. Cir. 2022) (agreeing with the Board that the proposed negative limitation was unsupported by the claims and specification even though no embodiments illustrated the Board's non-limiting construction).

Patent Owner also argues that "the fact that the specifications teach automation of the functionality" and "the need for speed and efficiency" support importing a negative limitation. Appellant Br. 36-37, 41. But these references to automation, speed, and efficiency in the specification are simply general statements about the advantages of computer implementation—they are not directed to the limitation at issue. And, even if they were, such general statements are insufficient to import a negative limitation into the claims. *Omega*, 334 F.3d at 1322-23 (there must be an "express disclaimer or independent lexicography" to justify adding a negative limitation). Indeed, as discussed above, even if the *claims* recited automation, that would not be enough to preclude user interaction. And Shaffer too discusses the benefits of automation, speed, and efficiency. It explains that one of the many benefits of its system is to "simplify the handling of multiple calls" and reduce the risk of transcription errors by "allow[ing] the user to be *automatically* connected, in sequence," to multiple websites. Appx1162 (1:25-51),

Appx1164 (5:35-6:29). Thus, to the extent that these benefits are relevant to the claims at all, the benefits are specifically taught by Shaffer.

Patent Owner further argues that "[b]ecause the claims expressly recite that 'sequentially accessing' is performed by 'said computer'—and *not* 'said users'— Google's position . . . could *only* have merit *if* there were some lexicography or disavowal in the specifications." Appellant Br. 35 (emphasis in original). But Google is not arguing that the applicants disavowed the use of a computer in favor of a user, only that a user can interact with the computer during the computer-implemented process.

Finally, Patent Owner cites several cases for the proposition that a negative limitation is appropriate here, but those cases are distinguishable. For example, Patent Owner relies on a portion of *Z4 Techs.* for the proposition that the term "computer" cannot mean "a user" (Appellant Br. 34-35), but the limitation Patent Owner relies on from this case recites a list that separately recites a computer and a user: "comparing previously stored registration information . . . to at least one of the software, *the user, and the computer*." *Z4 Techs.*, 507 F.3d at 1348. The district court construed "user" in that list to mean "a person, a person using a computer, *a computer*, or computers." *Id.* at 1347-48. The Court found that "[t]o construe the term 'user' to mean a 'computer' would result in the claim being interpreted to recite, for example, 'enabling the software on a computer for use by a

[computer],'" which was not reasonable or logical. *Id.* The Court instead construed "user" to mean "a person or a person using a computer." *Id.* This makes perfect sense in that context. And that is entirely consistent with Google's position. Google is not seeking to construe "a user" and "a computer" to mean the same thing. Instead, consistent with *Z4 Techs.*, a user may be a user of a computer, using the computer to perform whatever actions the computer is programmed to perform.

Patent Owner also cites *Lenovo Holding Co. v. DoDots Licensing Sols. LLC*, No. 21-1247, 2021 WL 5822248, at *3 (Fed. Cir. Dec. 8, 2021) (unpublished), but in that case the Court affirmed the Board's construction where the specification expressly defined the term to include the negative limitation. Patent Owner also cites *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362-64 (Fed. Cir. 2016), but in that case the Court affirmed the district court's construction including a negative limitation where patentee distinguished prior art during prosecution based on that limitation. Neither of these circumstances applies here.

Thus, to the extent that the application of Shaffer to the "said computer sequentially accessing" limitation raises a claim construction issue, the claim language, specification, prosecution history, and relevant case law support a

construction that the "said computer sequentially accessing" limitation does not include a negative limitation that excludes user interaction.[3]

### D. The Board panels did not shift any burden to the Patent Owner.

Patent Owner also makes a procedural argument that the Board's decision, even if correct on the merits, was flawed because "the Board appeared to place the burden *on Parus* 'to provide sufficient evidentiary support' from the specifications for its plain-language claim reading." Appellant Br. 40-41 (citing Appx26, Appx62, *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc*., 800 F.3d 1375, 1378 (Fed. Cir. 2015)) (emphasis in original). But the Board panels were correct in explaining that in the absence of "sufficient" evidence from the record, it could not import a negative limitation into the meaning of the claims. This is black letter law, not "burden shifting." *Omega*, 334 F.3d at 1322-23; *Novartis*, 38 F.4th at 1017.

As a general matter, "a party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is

---

[3] As Mr. Lipoff explained in his declarations, even if the claims could be read as narrowly as Patent Owner argues, it "would have been obvious to implement Shaffer's sequential searching technique into Wise's system regardless of whether it was a manual or automatic sequential search." Appx2308-10 (¶¶ 17-19), Appx6710-13 (¶¶ 20-22); *see Cimline, Inc. v. Crafco, Inc*., 413 F. App'x 240, 246-47 (Fed. Cir. 2011) ("The automation of mechanical equipment once operated manually is commonplace and reasonably obvious to one of ordinary skill."). The Board did not reach this argument. Therefore, were the Court to be persuaded by Patent Owner's claim construction argument, Google's argument that automating the user contributions to Shaffer's method should be addressed on remand.

the proper one, demonstrating why such an alteration is required." *K-2 Corp. v. Salomon SA*, 191 F.3d 1356, 1363 (Fed. Cir. 1999); Robert L. Harmon et al., *Patents & the Federal Circuit*, § 6.2(c), 487 (12th ed. 2015) (citing *K-2*, 191 F.3d at 1363); *see also* Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the PTAB, 83 Fed. Reg. 51,340, 51,345 (Oct. 11, 2018) ("Each party bears the burden of providing sufficient support for any construction advanced by that party.").

To the extent that this can be said to be shifting the burden of production on the Patent Owner, doing so would be consistent with *Dynamic Drinkware*, where the Court held that if a patent owner seeks to establish an earlier priority date it must produce evidence of such. 800 F.3d at 1378-80. Analogizing to *Dynamic Drinkware*, Patent Owner is the one seeking to import a negative limitation, so it should provide evidence supporting its own position.

*In sum,* the Board panels' findings that Shaffer teaches the "said computer sequentially accessing" limitation is correct under substantial evidence and de novo review, and the Board panels did not shift any evidentiary burden to Patent Owner.

**II.    The Board correctly found that Wise teaches the "plurality of preselected web sites"/"web site addresses" limitation of the '941 patent**.

**A.    The Board's finding as to Wise was supported by substantial evidence**.

Both patents claim a method of retrieving information from a plurality of websites, but claim 1 of the '941 patent more specifically recites "[a] method for retrieving information from *pre-selected* web sites" and an instruction set comprising, in part, "a plurality of *pre-selected* web site addresses, each said web site address identifying a web site containing said information to be retrieved." Appx20. In the '941 IPR, the Board found that Wise teaches the "plurality of *pre-selected* web sites"/ "web site addresses" limitation, and that finding was supported by substantial evidence.

Wise describes a "voice response system." Appx1137 (2:50-58). After a user command is translated into a subject word or phrase, the system attempts to retrieve websites based on the command. Appx1139 (6:14-51). Wise "has two modes for website retrieval, one that relies on memory storage" (the first mode) "and one that relies on searching" (the second mode). Appx20-21. In the first mode, after a speech command uttered into the telephone is converted to text, Wise teaches that "a *predetermined* audio-compatible address is selected" from memory storage by the parser, a software program that matches the subject word or phrase. Appx1139 (6:37-42). In the second mode, "the user may choose to invoke a search

for related file addresses on the computer network," in which case the parser will send the subject word or phrase to a searcher to find them. Appx1139 (6:35-37, 6:39-51).

Google explained, and the Board agreed, that Wise teaches the limitation's "pre-selected" requirement "through at least its first mode (memory storage)." Appx24-25.[4] And the Board further relied on Wise's claim 8, which "explicitly uses the plural in reciting 'a computer memory connected to the parser for storing *predetermined* file address*es*'" for the limitation's "plurality" requirement. Appx21 (citing Appx284, Appx596, Appx603, Appx1141-42 (10:66-11:2)). The Board explained that Google's "reliance on Wise's claim 8 b[ore] specifically on [Google's] contention that Wise 'plainly discloses that there may be more than one predetermined website address in the Parser.'" Appx22.

Google cited, and the Board also relied on, Mr. Lipoff's testimony, which the Board found supported that there may be more than one predetermined website address in Wise. Appx21 (citing Appx998 (¶ 230)). Specifically, the Board relied

---

[4] Google disagrees that the Board relied only on Wise's first mode in finding that this limitation is met by Wise. As explained below, the Board also relied on Mr. Lipoff's testimony that the addresses were placed into memory storage (first mode) based on prior searches returned by the searcher (second mode). Appx22-23. Regardless, if the Court agrees that the Board only considered the first mode and that Wise's first mode is lacking, the Board would need to consider on remand Google's argument that Wise's second mode or the combination of Wise's first mode and second mode teaches this limitation.

on Mr. Lipoff's deposition testimony describing Wise "as storing websites previously found by the searcher" (using Wise's second mode) "as 'preselected websites' in local memory," which "allows Wise's system to attempt to select one of such preselected websites from local memory with its first mode." Appx22-23 (citing Appx5009-10 (147:18-148:2)). The Board's expert credibility determinations are entitled to deference. *Intell. Ventures II*, 813 F. App'x at 538.

Finally, Google cited, and the Board relied on, "Patent Owner's statement" in another proceeding, IPR2022-00805, involving Patent Owner's '314 patent and the Wise reference, where Patent Owner admitted "that 'Wise does disclose predetermined file addresses stored in a computer memory that is connected to the Parser.'" Appx21-22 (citing Appx2792, Appx2831-32).[5]

---

[5] After Google raised this admission in its Reply, Patent Owner did not dispute that it made such an admission or that it was relevant to the Board's decision. Similarly, Patent Owner does not dispute the Board's reliance on this admission on appeal. Even if Patent Owner had, it was proper for the Board to consider and give weight to Patent Owner's admission. *See, e.g., Cook Grp. Inc. v. Boston Sci. Scimed, Inc.*, 809 F. App'x 990, 999-1000 (Fed. Cir. 2020) ("*Cook I*") (holding that "an admission in a preliminary patent owner response [POPR] is evidence appropriately considered by a factfinder" as is "[t]he amount of weight to give" it); *Boston Sci. Scimed Inc. v. Cook Grp. Inc.*, 809 F. App'x 984, 989 (Fed. Cir. 2020) (remanding a related IPR proceeding for consideration of Patent Owner's POPR admissions in *Cook I*); *see also Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." (citation omitted)).

*In sum*, the Board relied on substantial evidence in the form of Wise's teachings, the testimony of Google's expert, and Patent Owner's own admissions to support its finding that Wise teaches the "plurality of pre-selected web sites"/"web site addresses" limitation.

**B.      Patent Owner's arguments as to Wise have no merit**.

On appeal, Patent Owner argues that "Wise discloses only a one-to-one correspondence between any given subject word or phrase and a predetermined file address" (singular). Appellant Br. 48. Therefore, even if there may be more than one predetermined website address stored in computer memory, as Google argues based on Wise's claim 8, Patent Owner argues that Wise's claim 8 "says nothing" about whether those addresses "each contain 'the same 'said information to be retrieved'''" by the speech command as required by the claim. Patent Owner argues that "[t]he answer to *that* critical question . . . can only be found in Wise's written description" which recites "a single address" in response to a speech command. *Id.* at 50.

Patent Owner's argument fails for three reasons: (1) it ignores Wise's claim 1 from which claim 8 depends, which ties claim 8's predetermined file addresses (plural) stored in memory to claim 1's "user command" (singular); (2) it conflicts with black letter law that patent claims are not limited to exemplary embodiments

in the specification; and (3) it ignores what Wise *as a whole* teaches to a person of ordinary skill in the art.

Although the question of what Wise's claim 8 teaches is not a question of claim construction, Patent Owner's argument demonstrates why claims are not construed in isolation and are generally entitled to their plain and ordinary meaning without importing an exemplary embodiment into the claim. Wise's claim 1 recites in relevant part: "An interface system for presenting one or more computer documents [i.e., files/file addresses] in an audio format and navigating through said documents, comprising: an audio interface *for receiving a user command*; . . . a browser connected to the call manager for retrieving a document identified by a link from a computer network related to the subject word or phrase; *a parser connected to the call manager* for parsing the document into file segments according to the standard format." Appx1141. Claim 8 recites "[a]n interface system according to claim 1 further comprising: *a computer memory connected to the parser for storing predetermined file addresses*." Appx1141-42.

Read in the context of the claim from which it depends, claim 8's addresses (plural) relate to the user command (singular) of claim 1. The speech command in claim 1 may be matched to predetermined file addresses in claim 8, which each contain the same information to be retrieved by the speech command. This and claim 1's recitation of "one or more computer documents" confirm that there is no

such "one-to-one correspondence" requirement between a speech command and predetermined file address in Wise. The Board therefore properly rejected the argument that "[Google's] reliance on Wise's claim 8" failed to consider that each website must contain "the same 'said information to be retrieved.'" Appx22.

As to the specification, Wise does disclose that the parser may match the subject word or phrase corresponding to the speech command to a predetermined file address in the singular. Wise's singular address example in the specification, however, does not limit Wise's plural addresses in claim 8 or its "one or more documents" in claim 1. *Phillips*, 415 F.3d at 1323. The Board correctly found that Wise's claim 8, which "explicitly uses the plural in reciting . . . predetermined file addresses" "plainly discloses that there may be more than one predetermined website address in the Parser." Appx21.

Patent Owner also argues that "[w]hen patents distinguish between plural and singular in back-to-back sentences, that distinction has meaning and must be respected." Appellant Br. 46-48. But, again, Google does not dispute that Wise uses the singular predetermined "address" language in the specification to describe its "memory storage" mode. Rather, Google argues that the language from the specification is illustrative.

As Patent Owner itself argues, "[a]n obviousness analysis requires that prior art references be considered '*as a whole*.'" Appellant Br. 47 (citation omitted). The

Board's analysis which considered Wise for *all* of its teachings, including claim 8, was correct. *See, e.g.*, *In re Arora*, 369 F. App'x 120, 122 (Fed. Cir. 2010) ("[A] prior art reference is relevant for all that it teaches to those of ordinary skill in the art."); *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) ("A reference may be read for all that it teaches, including uses beyond its primary purpose.").

Patent Owner also argues that "Google's petitions implicitly acknowledged this evidentiary deficiency, selectively quoting from Wise's disclosure to remove singular articles and add '[es]' wherever necessary to make the references appear plural." Appellant Br. 47 n.3. But, as stated above, it was appropriate to paraphrase the specification because that discussion was illustrative in view of Wise's claim 8, which explicitly recites "addresses" (plural). Appx21.

Patent Owner also argues that the Board erred in relying on testimony from Mr. Lipoff where he opined that Wise "stor[es] websites previously found by the searcher as 'preselected websites' in local memory." Appellant Br. 50-54 (citing Appx23). *First,* Patent Owner argues that Mr. Lipoff's testimony "was not offered in Google's petition, nor in any declaration submitted with the petition" and therefore "cannot support any determination of obviousness" as a matter of law. Appellant Br. 50. This is not true. Mr. Lipoff specifically relied on Wise's claim 8 in his expert declaration as teaching this limitation. Appx929-30 (¶ 100), Appx997-98 (¶ 229). However, when Patent Owner nevertheless asserted that Wise failed to

show "a plurality of predetermined web sites"/"web site addresses" (Appx567-70), Google replied to that argument, relying on Mr. Lipoff's deposition and declaration testimony, as Board rules and relevant case law permit (Appx602-06). *See* 37 C.F.R. § 42.23(b); *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706-07 (Fed. Cir. 2020); *Rembrandt Diagnostics LP v. Alere Inc.*, 76 F.4th 1376, 1384 (Fed. Cir. 2023); PTAB Consolidated Trial Practice Guide 73-75 (2019).

Moreover, to the extent that any aspect of Mr. Lipoff's testimony can be considered new, there can be no argument that Patent Owner was prejudiced in any way, as Patent Owner had an opportunity to respond to Google's reliance on that testimony in its Sur-reply and a chance to depose Mr. Lipoff on his Reply declaration but chose not to do either. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081 (Fed. Cir. 2015) (patent owner was not denied a meaningful opportunity to respond when it failed to avail itself of the opportunities to do so).

*Second*, Patent Owner argues that because Mr. Lipoff's testimony was not based on "any express teaching in Wise," Google "would have to show that this functionality upon which the Board relied was inherent in Wise." Appellant Br. 51-52. Patent Owner is again incorrect. Mr. Lipoff did not testify that Wise is missing a disclosure that is necessarily present in the reference (inherency). *See Par Pharm., Inc. v. TWi Pharms., Inc.*, 773 F.3d 1186, 1194-95 (Fed. Cir. 2014) ("[I]nherency may supply a *missing* claim limitation in an obviousness analysis.").

Rather, Mr. Lipoff's testimony was that "*Wise's disclosures* indicate that a plurality of predetermined web addresses are stored and ranked in the system," including Wise's explicit disclosure of more than one predetermined website address in claim 8. Appx21 (citing Appx998 (¶ 230)), Appx2295, Appx2299-301 (¶ 8).

*Third*, Patent Owner argues that "Mr. Lipoff *expressly disclaimed his own reliance* on the very piece of testimony that [the] Board cited in support of its determination." Appellant Br. 52-54 (emphasis in original). This mischaracterizes Mr. Lipoff's testimony and the Board's decision. As Mr. Lipoff explained, "how the preselected websites are stored into the Parser memory in the first place, whether from the Searcher or otherwise, is not important to his opinion regarding Wise's teachings of 'preselected websites.'" Appx24, Appx5010 (148:3-19). That's because, as Mr. Lipoff testified, "it's sufficient to say that, as you step into the operation of Wise . . . the parser has got preselected websites stored in its memory." Appx2303-04 (¶ 10) (citing Appx5010 (148:7-19)). Therefore, "[i]t's simply enough that there is a disclosure that . . . there could be preselected websites that are already stored in the memory." Appx5010 (148:3-19), Appx2304 (¶ 11). As Mr. Lipoff further explained, "[k]nowing how the list of predetermined website addresses in the Parser was formed for the first mode [was thus] not necessary to demonstrate that Wise discloses a plurality of predetermined website

addresses." Appx2304 (¶ 11) (citing Appx5012-13 (150:19-151:13)). As the Board found, Mr. Lipoff therefore did not "disclaim" his testimony explaining how the addresses could have been stored in memory, he simply stated that how the websites got into memory in the first place was not essential to his conclusion that multiple predetermined addresses are in fact present in the memory. The Board's assessment of Mr. Lipoff's testimony is entitled to deference. Appx23-24.

For these reasons, Patent Owner's arguments that Wise fails to teach the "plurality of pre-selected web sites"/"web site addresses" limitation and that the Board erred in relying on Mr. Lipoff's testimony have no merit.

## III. Patent Owner's argument that Wise fails to teaches the "content descriptor" limitation of the '402 patent is barred by issue preclusion.

In its appeal of the '402 Final Written Decision, Patent Owner challenges whether Wise meets the "content descriptor" limitation. But Patent Owner litigated this identical issue in the '941 IPR and lost. Once the Board issued a final decision and once Patent Owner failed to appeal that portion of the decision, Patent Owner was precluded from continuing to litigate it in its appeal of the '402 Decision.[6]

Issue preclusion, also referred to as collateral estoppel, applies "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *B&B Hardware,*

---

[6] This argument applies equally to other claims in the '402 patent with the "content descriptor" limitation (claims 9-15).

*Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (cleaned up) (determining that issue preclusion may apply based on a prior determination of the USPTO's TTAB). The adjudicated issue is then "conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* (citation omitted). Issue preclusion applies to IPR proceedings. *Hammond*, 54 F.4th at 1381. There are four requirements for issue preclusion to apply: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) [the estopped party] had a full and fair opportunity to litigate the issue in the first action." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994).

All four requirements of issue preclusion are met here. *First*, both IPR proceedings presented the "identical" issue: whether Wise teaches the "content descriptor" claim limitation. The Court's "precedent does not limit collateral estoppel to patent *claims* that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood Co. v. Alps South LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Thus, issue preclusion attaches when patent claims "are substantially similar" or "use slightly different language to describe substantially the same invention." *Id.* at 1343; *see also MaxLinear Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018).

The below table compares the exemplary claim limitations at issue in the '402 patent with the similar claim limitations at issue in the '941 patent.

| '402 patent | '941 patent |
|---|---|
| [1D] providing a speech command . . . | [1F] providing a speech command . . . said speech command corresponding to said instruction set; |
| 2. The method of claim 1 wherein said speech command is further associated with *a content descriptor associated with each said web site address, said content descriptor pre-defining a portion of said web site containing said information to be retrieved.* | 2. The method of claim 1 wherein said instruction set further comprises *a.* [sic] *content descriptor associated with each said web site address, said content descriptor pre-defining a portion of said web site containing said information to be retrieved.* |

Appx95, Appx116.

In both claims, the speech command is associated with a content descriptor associated with a website address, wherein the content descriptor predefines a portion of the website containing the information to be retrieved. The only difference is that in the '402 patent, a "speech command" is "associated with" the "content descriptor," and, in the '941 patent, the "speech command" "corresponds to" an "instruction set" that "further comprises" the "content descriptor." The claims therefore "use slightly different language to describe substantially the same invention." *Ohio Willow*, 735 F.3d at 1342-43.

The substantial similarity of the claims is confirmed by the prosecution history below, in which the examiner rejected the '402 patent claims under obviousness-type double patenting for "claiming the same invention" as the '941

patent claims. Appx6537-41. Patent Owner overcame the rejection by filing a terminal disclaimer. Appx6566-73, Appx6581.

The parties' treatment of the claims also confirms that they are substantially similar. Google relied upon the same teachings from Wise for the "content descriptor" limitation in both IPRs. Appx290-91, Appx5704-05. And Patent Owner relied on the same arguments in its responses. Appx391-95, Appx5804-08. For this reason, whether Wise teaches the "content descriptor" limitation is identical for purposes of issue preclusion. Thus, the first issue preclusion requirement is met.

*Second*, the issue was actually litigated in the '941 IPR. As to the second requirement, it is "generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it." *Freeman*, 30 F.3d at 1466. Here, Google argued that software residing on Wise's server IP uses document(s) with "tags," which "designat[e] links or portions of a document," to execute the functionality of the "content descriptor" described by the patents. Appx290-91, Appx5704-05. And Patent Owner disputed that argument at length, making the identical argument in both Preliminary Responses that the "content descriptor" limitation was not taught by Wise. Appx391-95, Appx5804-08. Specifically, Patent Owner argued in both proceedings that because the claimed "content descriptor must be known prior to accessing a website" to be associated with a speech command, Wise's content

descriptor, which is "not known beforehand and requires user input beyond the claimed speech command," does not meet the limitation. *Id.*

The Board in its institution decisions found this limitation to be taught by Wise. Appx458, Appx5869-70. Patent Owner did not explicitly challenge this point in its '941 Response and Sur-reply, only arguing against Wise generally in those papers without offering any argument about the "content descriptor" limitation. Appx567-74, Appx640, Appx649-56. But it continued to argue that this limitation is not taught by Wise in its '402 Response and Sur-reply. Appx5977-81, Appx6065-69.

Additionally, in the Final Written Decisions, both Board panels expressly determined that the "content descriptor" limitation was obvious over Wise. Appx28-29, Appx65-68. In the '941 Decision, the panel found that Google made "a sufficient showing" as to the "content descriptor" limitation, which Patent Owner did not dispute. Appx28-29.

Patent Owner's decision in the '941 IPR to not respond to Google's arguments after the Board issued its institution decision does not defeat issue preclusion. The Court has held in similar circumstances that even limited engagement with an argument is sufficient for issue preclusion purposes. *See VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 802-04 (Fed. Cir. 2019) (finding issue preclusion applied to a party's asserted invalidity challenges under 35 U.S.C.

§§ 101, 102, 103, and 112, where the party developed those arguments during discovery, and then presented only a subset of them at trial); Restatement (Second) of Judgments § 27, cmt. d ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. . . . A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof."); 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4419 (3d ed. 2021) ("[P]reclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way.").[7] Therefore, the second requirement for issue preclusion is met.

*Third*, resolution of the issue was essential to the final judgment in the '941 IPR. *Freeman*, 30 F.3d at 1465. As to the third requirement, the purpose is "to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Id.* at 1466. Whether Wise taught the "content descriptor" limitation was essential to the Board's independent conclusion that claims 2 and 9-15 of the '941 patent were

---

[7] The facts here are distinguishable from cases where the "actually litigated" prong was found not to be met because the issue in question was not essential to the case or the issue could have been raised but was not. Here, the "content descriptor" limitation was a disputed issue at the heart of the patentability case for both IPRs, and the Board was required to, and did in fact, make findings in order to conclude claim 2 and other claims with this term were unpatentable.

unpatentable in view of Wise. *See* 35 U.S.C. § 318(a). Thus, the third requirement for issue preclusion is met.

*Fourth*, Patent Owner had a full and fair opportunity to litigate the issue. *Freeman*, 30 F.3d at 1465. As to the fourth requirement, the Court has found it satisfied if "the prior action featured full representation of the estopped party." *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640, 644 (Fed. Cir. 2012). Patent Owner had a full and fair opportunity to litigate the issue. Patent Owner was represented by the same counsel as in the present appeal. It participated fully, submitting a Preliminary Response arguing that this limitation was not taught by Wise (Appx391-95), and submitted a Patent Owner Response, and a Sur-reply where it could have continued to make this argument after the Board found the limitation was met by Wise in the institution decision (Appx458). It also participated in the consolidated hearing for the '941 and '402 IPRs, addressing this claim limitation. Appx725-26. Finally, Patent Owner had the opportunity to appeal the Final Written Decision in the '941 IPR on this limitation but chose not to. Thus, the fourth requirement for issue preclusion is met.

The Court has barred relitigating issues under similar circumstances. *See, e.g., Papst Licensing GMBH & Co. KG v. Samsung Elecs. of Am., Inc.*, 924 F.3d 1243, 1252 (Fed. Cir. 2019) (barring patent owner from relitigating Board issues resolved in a related IPR based on the same prior art arguments and patents with a

shared specification); *Hammond*, 54 F. 4th at 1380, 1382 (barring patent owner

from relitigating Board issues resolved in a related IPR on the same obviousness

grounds, the same prior art arguments, and patents that were related).

Although some practitioners have argued that issue preclusion does not

apply to a PTAB decision until this Court issues a decision, citing *XY, LLC v.*

*Trans Ova Genetics, L.C.*, 890 F.3d 1282 (Fed. Cir. 2018) and *United Therapeutics*

*Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360 (Fed. Cir. 2023), *cert. denied*, No. 23-

804, 2024 WL 675262 (2024), in those cases, the question before the Court was

whether a Final Written Decision of the Board has preclusive effect on a pending

*district court proceeding*. That presents a very different question than applying

issue preclusion between PTAB proceedings. The general rule, applicable here, is

that issue preclusion applies once a tribunal issues a final decision, notwithstanding

the presence of pending or possible appeal(s). *See, e.g.*, *Deposit Bank of Frankfort*

*v. Bd. of Councilmen*, 191 U.S. 499 (1903) (a tribunal decision maintains

preclusive effect despite the pendency of an appeal); *Pharmacia & Upjohn Co. v.*

*Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) ("The law is well

settled that the pendency of an appeal has no effect on the finality or binding effect

of a trial court's holding."); *Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir.

1993) (same); *Mobile Tech, Inc. v. Invue Security Prods. Inc.*, IPR2018-00481,

Paper 29 at 33 (P.T.A.B. July 16, 2019) ("[t]he fact that an appeal is pending does not prevent the application of collateral estoppel" (citing *Rice*, 998 F.2d at 999)).[8]

But even were the *appealed portions* of a final written decision not "final" until the appeal is decided by this Court, the portions that were not appealed are subject to issue preclusion. *See* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4433 (3d ed. 2021) ("A party who elects to appeal on one issue, omitting another issue on which it lost, is subject to issue preclusion on the issue not appealed."). Here, Patent Owner chose not to appeal the Board's decision as to "content descriptor" limitation, resolving any arguably open question of whether the '941 Decision results in issue preclusion.

Finally, no equitable consideration weighs against applying issue preclusion here. Patent Owner had a full and fair opportunity to, and did, litigate this issue in both IPRs. Patent Owner alluded to the fact that it was limited in which arguments it could make due to word limits. *See* Appx768 (44:7-12) (Patent Owner responding to Google's argument at the hearing about its different arguments in the

---

[8] *See also* Restatement (Second) of Judgments § 13, cmt. f ("A judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo."), cmt. g (same), and § 83 ("An administrative adjudication becomes preclusive when it has become final in accordance with the rules stated in §§ 13 and 14" and "[i]t is not necessary that the administrative adjudication have been reviewed and affirmed by a court."); 20 J. Moore et al., *Moore's Federal Practice* § 308.10 (3d ed. 2022) ("An appeal from a judgment does not automatically suspend operation of the judgment until the determination of the appeal.").

'941 versus the '402 IPR, stating: "there is a limited number of words that can be included in a Patent Owner response. The briefing is limited."). But Patent Owner never sought more words in any of its papers.

And, while the merits of the issue are strongly in Google's favor given the teachings in Wise and the Board's well-reasoned decision, in the unlikely event that the Court were to reverse the Board's finding as to the "content descriptor" limitation in the appeal of the '402 IPR but to affirm the Board panel's findings in the '941 IPR, then it would lead to inconsistent results. The '402 patent would stand patentable in view of Wise, and the '941 patent would stand unpatentable notwithstanding the Court's decision that Wise fails to teach every limitation of the substantially similar claims at issue in the '402 patent. This is one of many reasons why the doctrine of issue preclusion exists.

*In sum*, because the elements of issue preclusion are met and the equities weigh in favor of applying issue preclusion, Patent Owner's arguments as to the "content descriptor" limitation of the '402 patent should be barred.

**IV. If not barred by issue preclusion, the Board correctly found that Wise teaches the "content descriptor" limitation of the '402 patent.**

**A. The Board's findings as to Wise were supported by substantial evidence.**

In the '402 IPR, the Board found that Wise teaches the "content descriptor" limitation. That finding was supported by substantial evidence.[9]

Google argued and the Board agreed that Wise's disclosure of documents (i.e., websites) that "contain content 'useful for navigation' 'such as 'tags that 'designat[e] links or portions of a document''" meets the "content descriptor" limitation. Appx65-66 (citing Appx5704-05, Appx1137 (2:61-66)). Specifically, "software residing on the server IP uses Wise's document(s) with tags to execute the functionality of the 'content descriptor' as described by the '402 patent." *Id.*

The Board also relied on the testimony of Mr. Lipoff that "a POSITA would have understood that such software is a 'content descriptor' because 'it uses 'tags' and the 'file associated with the web page' which directs the extraction agent (Wise's Parser 230) to identify and interpret data from the website.'" Appx65-66 (citing Appx5704-05, Appx1141 (10:7-19), Appx6408-09 (¶ 224)). Mr. Lipoff further explained that a POSITA would have understood that "'this software is stored in script 'files' to be accessed by the content extraction agent (Parser 230),'

---

[9] As noted above, this argument applies equally to other claims in the '402 patent with the "content descriptor" limitation (claims 9-15).

because this would be the most convenient way to execute scripts that parse tag data accessed by Wise's 'file-based hierarchical system.'" *Id*.

Thus, the Board relied on substantial evidence in the form of Wise's disclosures and the testimony of Google's expert to support its finding that Wise teaches the "content descriptor" limitation.

## B.     Patent Owner's arguments as to Wise have no merit.

On appeal, Patent Owner asserts that Wise fails to teach the "content descriptor" limitation because, while Wise's tags might broadly speaking describe content, the tags are not "associated with a speech command," are not "associated with each said web site address," and do not "pre-defin[e] a portion of said web site." Appellant Br. 55-58. Each of these arguments lacks merit.

### 1.     Wise teaches that "said speech command is further associated with a content descriptor."

On appeal, Patent Owner argues that Wise's tags are not associated with the "speech command" because there is no "disclosure of an association between the 'subject word or phrase' *initially* used to select the web page . . . and the 'HTML . . . tags' that may *subsequently* be used to 'navigate the document.'" Appellant Br. 56, 58-59 (emphasis in original). But, in making this argument, Patent Owner is interpreting "associated" "as including a temporal requirement." Appellant Br. 60-61 (arguing that a "before/after temporal requirement" is "baked into the claim itself").

There is no requirement in the claims that the "speech command" be pre-associated with the "content descriptor" before it is uttered. It is enough that the command and the content descriptor address the same topic, e.g., the weather, a stock price, etc. The Board agreed. Appx66-67 ("claim 2 merely requires that the speech command be 'associated with' the content descriptor . . . no such distinction from the claimed 'content descriptor' is provided in the specification of the '402 patent, and 'importantly, no before/after temporal requirement is disclosed'"). When the applicant wanted to require a temporal relationship in this limitation, it used the term "pre," as in "pre-define," discussed below.

So, for example, if an HTML tag designates certain information, say a stock symbol link, and the speech command requests certain information, say information about a specific stock, the speech command is "associated" with the tag. Google relied on such an example from Wise, and the Board agreed that Wise's "stock quotes" example, taught "'a content descriptor file ('tag') designating stock symbol links in 'a document containing a list of stock symbols and quotes,'' wherein '*in response to a speech command* requesting, e.g., 'today's stocks,'' the data including 'today's stocks' would have been returned, which clearly would be ''associated' with the command.'" Appx67 (citing Appx6017-18, Appx6701, Appx6705-10 (¶¶ 14-17)). The Board agreed with Google that "[n]othing more is required by the claims." Appx67 (citing Appx6017-18).

### 2. Wise teaches "a content descriptor associated with each said web site address."

Patent Owner argues that Wise's tags are associated "with the navigational content *within* a webpage file that is ultimately downloaded" and not "with the web site *address*" as required by the claim. Appellant Br. 56 (emphasis original), 58. But, if Wise's tags are part of the HTML code that defines the webpage and indicates the location where responsive information may be found therein, they are "associated" with the webpage. Appx67 (citing Appx6017-18 (citing Appx6707-10 (¶¶ 14-17))). And if they are associated with the webpage they are associated with the "website address" for that webpage; the "website address" is simply the location at which the associated website is accessed by a browser.

This is consistent with the specification, which discusses the "associated" part of the limitation only one time, stating simply that the "content descriptor" is "associated with *the web page identified by the URL*" and "for each supported URL indicates *the location on the web page* where the response information is provided." Appx6017 (citing Appx108 (7:20-30)). Therefore, the specification shows that the association with the "web page" is enough to form an association with the "web site address" (the URL).

Patent Owner cites to Mr. Lipoff's deposition testimony from another IPR (IPR2022-00805) regarding the '314 patent to argue that he "admitted that the content descriptor file 'is a different file' than the web page itself." Appellant Br.

56 (citing Appx7417, Appx7434 (17:15-20)). The Court should give little or no weight to this evidence, because, among other reasons, it was provided for the first time in Sur-reply in violation of Board rules (37 CFR § 42.23(b)) and Google did "not ha[ve] an opportunity to address the content" of Mr. Lipoff's '314 deposition testimony in the '402 IPR. Appx6117-20. Additionally, unlike the '314 patent, the claims here recite a "content descriptor" not a "content descriptor file." Thus, whether the term "file" implies separateness from the web page, which the Board in the '314 IPR concluded was neither required by the claim nor what Mr. Lipoff said,[10] does not bear on whether the "content descriptor" is "associated with" the website and website address.

### 3. Wise teaches "said content descriptor pre-defining a portion of said web site containing said information to be retrieved."

Finally, Patent Owner argues that Wise's "tags do not pre-define a portion of a web site 'containing said information to be retrieved'" by the speech command, citing to an alleged explanation in Wise on "how its HTML tags are used." Appellant Br. 57 (citing Appx1137 (2:18-27)) ("For example, if a Web page is returned from the Internet, the title of the Web page may be read in a low male

---

[10] The Board in the '314 IPR found that in making its argument Patent Owner ignored Mr. Lipoff's other testimony which, "taken as a whole, . . . reflects an opinion that the recited 'content-descriptor file' is not required to be a file separate and distinct from an HTML web page." Appx7611, Appx7646-50.

voice. Headline information . . . may be read in a female voice. General text information . . . may be read in a different voice."). But these Wise disclosures do not relate to Wise's tags or stock symbol example relied upon by Google. Appx1137-38 (2:59-3:8). Instead, they relate to how the system "use[s] a text-to-speech engine to convert the document to audio information" (Appx1137 (2:15-33)), which is not relevant to whether Wise teaches the "content descriptor" limitation.

Patent Owner further argues that Wise's tags "merely indicate the classification or type of a particular section of the HTML document" and "provides no information about the actual words within the tag." Appellant Br. 57-58 ("For example, a title HTML tag simply indicates a section of text that is the title for the web page. As a further example, a typical HTML title tag may be: '<title>HTML Elements Reference</title>.'"). These arguments are new and should be deemed forfeited. *United States v. Great Am. Ins*. *Co*., 738 F.3d 1320, 1328 (Fed. Cir. 2013); *In re Baxter Int'l., Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012); *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1260 (Fed. Cir. 2010) ("Unsupported attorney argument, presented for the first time on appeal, is an inadequate substitute for record evidence.").

Regardless, Patent Owner is wrong. The claims do not require that the "content descriptor" do anything other than describe content. And Wise explains

that its tags classify portions of a webpage based on content so that a user can go to that portion of the document that has the content it seeks. This is all that is required of the claimed "content descriptor."

The specification explains that the content descriptor "directs the extraction agent where to extract data from the accessed web page." Appx89 (7:17-20). As an example, "the content description for a web page providing weather information would indicate where to insert the 'city' name or ZIP code in order to retrieve Chicago weather information." Appx89 (7:20-23). The content descriptor also indicates for each URL "the location on the web page where the response information is provided," which the extraction agent uses "to properly extract from the web page the information requested by the user." Appx89 (7:23-28). This is precisely what Wise's tag does. Appx65 (citing Appx1137 (2:61-66)) ("[A]n HTML document may contain tags designating links or portions of a document."). Therefore, when the user accesses the website, Wise's tags are used to go to the particular part of the website that has the requested information. Appx65 (citing Appx5704-05 ('402 Petition) (citing Appx1137-38 (2:61-3:8)) ("The system will attempt to navigate to a location corresponding to a user command and effect any action possible at that location. . . . If the command corresponds to textual content, the system will skip to the next occurrence corresponding to the command in the document.").

For example, if a user's speech command requests a particular stock, as soon as the website is accessed, Wise's tags are used to bring the user to the portion of the website having the corresponding stock symbol. Appx66 (citing Appx1138 (3:4-8)) ("[I]f a user inputs a command corresponding to a stock symbol, the system may skip ahead to the symbol and begin 'reading' at the location of the stock symbol."). Nothing more is required by the claims. Appx67.

*In sum,* if the Court finds that Patent Owner's argument is not barred by issue preclusion, it should affirm the Board's finding that Wise teaches the "content descriptor" limitation, which was supported by substantial evidence.

## CONCLUSION

Because the Board's findings are supported by substantial evidence, and because Patent Owner has not pointed to any errors that would warrant reversal or remand, Google respectfully requests that the Court affirm the Board panels' conclusions that claims 1-15 of the '941 patent and claims 1-15 of the '402 patent are unpatentable. However, if the Court is persuaded by any of Patent Owner's

arguments, the Court should remand the case for the Board to address the non-adjudicated arguments and grounds in the first instance.[11]

Respectfully submitted,

*/s/ Coke Morgan Stewart*

BENJAMIN HABER
O'MELVENY & MYERS LLP
400 S. HOPE STREET, 18TH FLOOR
LOS ANGELES, CA 90071-2899
(213) 430-6000

WILLIAM FINK
COKE MORGAN STEWART
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

CAITLIN P. HOGAN
O'MELVENY & MYERS LLP
TIMES SQUARE TOWER
7 TIMES SQUARE TOWER
NEW YORK, NY 10036
(212) 326-2000

March 4, 2024

*Attorneys for Appellee Google LLC*

---

[11] If the Court were persuaded by any of Patent Owner's arguments, additional arguments and grounds not reached by the Board would have to be considered on remand. The grounds would have to be considered in view of a Board panel's earlier decision on a related patent with substantially similar claims, U.S. Patent No. 7,076,431, in IPR2020-00846. In that decision, the Board found all challenged claims unpatentable based on the same grounds not reached here: Kovatch in view of Neal. That decision was affirmed by the Federal Circuit. *Parus Holdings, Inc. v. Google LLC*, Nos. 22-1269, 22-1270, 70 F.4th 1365 (Fed. Cir. 2023) (Lourie, J.).

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). This brief contains 13,688 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

*/s/ Coke Morgan Stewart*

*Attorney for Appellee Google LLC*